UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 20 CR 281 |
| v. | |
| EDDIE JONES | Judge Manish S. Shah |

## GOVERNMENT'S SENTENCING MEMORANDUM

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully submits this sentencing memorandum with respect to defendant Eddie Jones. For the reasons set forth below, a sentence at the high end of the Guidelines range of 78 to 97 months, is warranted and sufficient, but not greater than necessary, upon consideration of the relevant sentencing factors set forth in 18 U.S.C. § 3553(a).

## I. Background

On September 22, 2020, the grand jury returned an indictment charging the defendant, Eddie Jones, with being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1). Dkt. 1. On April 20, 2021, defendant pled guilty to the indictment. Dkt. 32. Defendant is scheduled to be sentenced by this Court on August 25, 2021, at 1:30 p.m. Dkt. 32.

## II. Offense Conduct

On or about June 5, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, defendant, knowing that he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year, did knowingly

possess, in and affecting interstate commerce, a firearm, namely a loaded Smith & Wesson M&P 9 Shield, 9 millimeter pistol, bearing serial number HLF7788, which firearm had traveled in interstate commerce prior to the defendant's possession of the firearm, in violation of Title 18, United States Code, Section 922(g)(1). Plea Declaration, at 1-2.

On June 5, 2020, at approximately 3:08 p.m., Chicago Police Department officers were speaking with a citizen on the 3400 block of West Iowa Street when they heard 5-7 gunshots just south of their location. PSR, at ¶6. The officers ran toward the area and observed defendant running northbound on Homan Avenue and then east on Rice Street. *Id.* The officers pursued defendant and came face-to-face with defendant in the alley east of Homan Avenue. *Id.* An officer observed Jones holding a firearm in his hand and observed the defendant toss the firearm into a vacant lot. *Id.* After another brief chase, the defendant was apprehended and the firearm was recovered. *Id.* The recovered firearm was a Smith & Wesson, M&P Shield 9 mm pistol, bearing serial number HLF7788. *Id.* The firearm had a laser scope, was loaded with one round in the chamber, and had live rounds in the firearm magazine. *Id.*

*Relevant Conduct: Shooting of Three Victims*

Immediately prior to his arrest in this case, defendant used the Smith & Wesson in the attempted murder of Victims A, B and C. PSR, at ¶24.

A. Shooting Victims

On June 5, 2020, at approximately 3:08 p.m., Victims A-C were shot at 814

North Homan Avenue, in Chicago, IL. PSR, at ¶7.

Victim A had six gunshot wounds in his thighs, legs and knee. PSR, at ¶9. While he was being treated by paramedics, a bullet fell out of Gaiter's leg wound ("Bullet A"). *Id.* Victim A was transferred to Stroger Hospital for surgery in response to his serious injuries. *Id.* A treating physician at Stroger found a fracture in Victim A' femur, caused by the bullet and "extensive retained metallic bullet fragments with posttraumatic inflammation/hemorrhage, and subcutaneous gas along the bullet track." *Id.* The doctor also found a bullet still in Gaiter's right knee. *Id.*, at 76. On June 6, a doctor found that "urgent surgery" was needed to "stabilize bone, improve stability and minimize morbidity." GV, Ex. K, at 90; PSR, at ¶9. During surgery, the doctors made an incision in Victim A' patellar tendon, and inserted a 400mm nail, affixed with multiple screws drilled into Victim A' leg. *Id.* Victim A was hospitalized for nine days. GV, Ex. K, at 177.

Victim B had a gunshot wound in his lower left leg and was transferred to Stroger Hospital for his injuries. PSR, at ¶10. Victim B had a fracture in his left tibia and was hospitalized for three days. *Id.*, Victim B underwent surgery and had an intramedullary nail inserted in his tibia. *Id.*

Victim C had a gunshot graze wound on his left hip and was treated at the scene. PSR, at ¶8.

> B. Pod Camera Footage Captured Jones Approaching the Site of the Shooting 18 Seconds Before the Shooting; Fleeing Immediately After the Shooting

A pod camera set up on the corner of Chicago Avenue and Homan Avenue

captured the defendant, wearing a red shirt, walking south on Homan, then walk westbound across Homan, to where the shooting victims were standing. PSR, at ¶13. Approximately nine seconds later, Jones walks out of the area where the shooting victims were located and met with a man by a car just east of the shooting location. *Id.* Nine seconds later, Jones and the other man ran to the area of the shooting and the shooting occurred. *Id.* After the shooting, the pod camera shows Jones running northbound up Homan Avenue, then cutting east on Rice Street. *Id.* Defendant was apprehended by CPD officers fleeing from the scene of the shooting. *Id.*

      C.  Forensic Evidence Matching Recovered Shell Casings and Bullet to Jones' Firearm.

CPD recovered seven spent shell casings from the scene of the shooting. PSR, at ¶15. The CPD Forensic Firearms Lab compared the shell casings to test cartridges from the recovered firearm. *Id.*  The CPD Forensic Firearms Lab concluded that four of the casings recovered from the scene of the shooting were fired from the firearm recovered from the defendant. *Id.*

A Forensic Scientist from the Illinois State Police Forensic Center examined the bullet recovered from Victim A' leg ("Bullet A") and determined that the recovered bullet was fired by the gun recovered from the defendant.[1] *Id.*

      D.  Eyewitness Statement

Witness A resides on the 800 block of North Homan Avenue, the location of the

---

[1] Officers also administered a gunshot residue test on defendant's hands. The test was unable to detect gunshot residue after defendant led officers on a chase and was detained by officers.

shooting. PSR, at ¶17. Witness A spoke to investigating detectives at the 11th

District and related that she looked out the window when she heard gunshots. *Id.*

Witness A saw a man matching Defendant's' appearance (namely, a bald male black

in his late 20's wearing a red shirt) firing a black semi-automatic handgun with his

right hand. *Id.* She then saw the man flee northbound. *Id.* After leaving her house,

she saw the man who had fired the firearm being taken into police custody.[2] *Id.*

### III. Offense Calculation and Guidelines Range

#### A. PSR Calculation of Offense Level

Pursuant to the November 2018 Sentencing Guidelines Manual, the PSR

calculates the total offense level as follows (PSR ¶¶23-33):

| | |
|---|---|
| 20 | **Offense Base Level** pursuant to USSG § 2K2.1(a)(4)(A), because defendant committed offense after sustaining felony conviction for aggravated vehicle hijacking while armed with a firearm. |
| +4 | **"In Connection With" Felony.** pursuant to USSG § 2K2.1(b)(6)(B) because defendant used firearm in connection with another felony offense, namely attempted murder and aggravated discharge of a firearm. |
| 24 | **Preliminary Offense Level** |
| 27 | **Adjusted Offense Level for Connection to Attempted Second-Degree Murder.** Pursuant to USSG § 2A2.1(a)(2) and 2X1.1(a), the offense level is 27 because the defendant's conduct involved the shooting of three individuals that constitutes attempted commission of second-degree murder. |
| +2 | **Serious Bodily Injury.** Pursuant to USSG § 2A2.2(b)(1)(B) and 1B1.1 App. Note 1(M), because the victims sustained injuries that required surgery and |

---

[2] Officers reported that in a separate canvassing interview of Witness A and her neighbors, Witness A (along with the other neighbors and victims) denied seeing the identity of the shooter. However, in a more comprehensive interview conducted at police headquarters, Witness A described how she witnessed the shooting and described the shooter as matching the appearance of the defendant.

| | |
|---|---|
| | hospitalization. |
| -3 | **Acceptance of Responsibility.** USSG § E1.1(a); E1.1(b) |
| 26 | **Total Offense Level** |

The government agrees with the PSR's calculation of the offense level.

B.    Criminal History

Probation and the government agree that the defendant's criminal history score is 5 and his criminal history category is III. PSR at ¶43.

On or about December 9, 2010, defendant was adjudicated delinquent for battery, in the Circuit Court of Cook County, Illinois, and was sentenced to 18 months' imprisonment. Pursuant to Guideline § 4A1.2(e)(4) and 4A1.2(d)(2)(B), defendant receives no criminal history points for this conviction. PSR at ¶41.

On or about May 22, 2013, defendant was convicted of aggravated vehicle hijacking with a firearm, armed robbery, and aggravated unlawful restraint in the Circuit Court of Cook County, Illinois, and was sentenced to 12 years' imprisonment. Pursuant to Guideline § 4A1.1(a), defendant receives 3 criminal history points for this conviction. PSR at ¶41.

On or about June 3, 2019, defendant was convicted of retail theft in the Circuit Court of Cook County, Illinois, and was sentenced to 60 days' imprisonment. Pursuant to Guideline § 4A1.1(b), defendant receives 2 criminal history points for this conviction. PSR at ¶42.

C.      Advisory Guidelines Range

The government agrees with the PSR's calculation of the defendant's advisory guidelines range as being 78 to 97 months. PSR at ¶85.

**IV.    The §3553(a) Factors Support Imposition of a Sentence of Imprisonment at the High End of the 78 to 97 Month Guidelines Range.**

Section 3553(a) requires the Court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing.[3]   In order to determine the sentence to impose, the court must consider the statutory factors listed in §3553(a)(1)-(7).   One of those factors is the advisory range set by the Sentencing Guidelines, and another is the Commission's policy statements.   §3553(a)(4), (a)(5). Although the Sentencing Guidelines are advisory only, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."   *Gall v. United States*, 552 U.S. 38, 49 (2007).   For the reasons set forth below, the statutory sentencing factors reflect that a sentence at the high end of the Guidelines range of 37 to 46 months is warranted.

A.      Seriousness, Nature and Circumstances of Offense

The seriousness, nature and circumstances of the offense demonstrate that a Guidelines sentence is warranted. Defendant, a convicted felon, was walking through

---

[3]Those purposes are the need for the sentence "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." § 3553(a)(2)(A)-(D).

the streets of Chicago with a loaded Smith & Wesson pistol with a laser sight. Defendant used this firearm in the attempted murder of three men standing on a residential street. Two of the victims were hospitalized and had to undergo surgery. One of the victims was shot six times in the thighs, leg and knee. Defendant then fled, with the loaded gun, through a residential neighborhood, pursued by police.

B.    History and Characteristics of Defendant

A high-end Guidelines sentence is warranted and consistent with the history and characteristics of the defendant. Defendant already has previous convictions for aggravated vehicle hijacking with a firearm, armed robbery, and aggravated unlawful restraint. PSR at ¶41. Defendant was discharged from parole for these offenses less than three months before his actions in this case. *Id.*

Defendant was also adjudicated delinquent after he battered and robbed a blind man, an event that is not accounted for in the calculation of defendant's criminal history. PSR at ¶40.

C.    The Need to Protect the Public and Afford Adequate Deterrence and Respect for the Law

The sentence imposed should have specific and general deterrent effects. *See* 18 U.S.C. § 3553(a)(2)(B); *United States v. Mendoza*, 576 F.3d 711, 722 (7th Cir. 2009) (noting that general deterrence is a factor to consider). A high-end Guidelines sentence of incarceration would protect the community from the defendant's violent actions.

Defendant's previous sentences of 12 years' incarceration did not deter defendant from possessing a gun and using it to shoot at victims in the street. If

anything, defendant's violent conduct has escalated in the wake of his previous term of imprisonment. A high-end Guidelines sentence would protect the community from defendant's violent and life-threatening behavior.

It is also important to stress the need for general deterrence. Over the past year, the Chicagoland area has been subjected to devastating firearm violence. The consistent application of federal law meant to curb this violence by preventing felons, and other prohibited persons from possessing and using firearms, is necessary to deter this violence. A high-end Guidelines sentence would send the message that violent behavior like that committed by the defendant is behavior that will not be tolerated by the federal government.

## V.  SUPERVISED RELEASE

The government recommends that the Court impose a guideline period of supervised release between one and three years. *See* PSR ¶ 88. During that period, the government recommends that the Court impose the following conditions:

### A.  Mandatory Conditions, Pursuant to 18 U.S.C. § 3583(d)

- The defendant shall not commit another federal, state, or local crime.

- The defendant shall not unlawfully possess a controlled substance.

- The defendant shall refrain from any unlawful use of a controlled substance AND submit to one drug test within 15 days of release on probation and at least two periodic tests thereafter, up to 104 periodic tests, during each year of supervised release for use of a controlled substance.

- The defendant shall cooperate in the collection of a DNA sample from the defendant at the direction of the United States Probation Office.

**B.     Discretionary Conditions, Pursuant to 18 U.S.C. §§ 3583(d) and 3563(b)**

The following conditions should be imposed on the basis that they (1) facilitate

supervision by the probation officer, which is important here to promote defendant's

respect for the law and deter the defendant from future crimes; and (2) are tailored

to address mental health and substance abuse issues which, if left untreated, will

prevent defendant from successfully reintegrating into society:

- The defendant shall provide financial support to dependents if financially able.

- The defendant shall seek, and work conscientiously, at lawful employment or pursue conscientiously a course of study or vocational training that will equip him for employment.

- The defendant shall refrain from knowingly meeting or communicating with any person he knows to be engaged, or planning to engage in criminal activity.

- The defendant shall refrain from excessive use of alcohol or any use of a narcotic drug or other controlled substance.

- Defendant shall refrain from possessing a firearm, destructive device or other dangerous weapon.

- Defendant shall participate, at the direction of a probation officer, in a substance abuse treatment program, which may include urine testing up to a maximum of 104 tests per year.

- Defendant shall refrain from knowingly leaving the federal judicial district where defendant is being supervised, unless granted permission to leave by the court or a probation officer.

- Defendant shall report to the probation office in the federal judicial district to which defendant is released within 72 hours of his release from imprisonment.  Defendant shall thereafter report to a probation officer at reasonable times as directed by the court or a probation officer.

- Defendant shall permit a probation officer to visit the defendant at any reasonable time at home; at work; at school; at a community service location; or at another reasonable location specified by a probation officer; and permit confiscation of any contraband observed in plain view of the probation officer.

- Defendant shall notify the probation officer within 72 hours of any change in residence, employer, or workplace and, absent constitutional or other legal privilege, answer inquiries by a probation officer.

- Defendant shall notify the probation officer within 72 hours if arrested or questioned by a law enforcement officer.

- Defendant shall participate in an approved job skill-training program at the direction of a probation officer within the first 60 days of placement on supervision.

- Defendant shall, if unemployed after the first 60 days of supervision, or if unemployed for 60 days after termination or lay-off from employment, perform at least 20 hours of community service per week at the direction of the U.S. Probation Office until gainfully employed. The amount of community service shall not exceed 300 hours.

- Defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court.

- Defendant shall observe one Reentry Court session, as instructed by his probation officer.

These supervised release terms are narrowly tailored to facilitate supervision by the probation officer, deter the defendant from future crimes, support defendant's rehabilitation and reintegration into the community, ensure that he is engaged in lawful pursuits rather than criminal activity.

11

## VI.    CONCLUSION

In view of the Section 3553(a) factors, a sentence at the high end of the Guidelines range of 78 to 97 months is fair, reasonable, and sufficient, but not greater than necessary.   For these reasons, the government respectfully requests that this Court impose a Guidelines sentence.

Respectfully submitted,

JOHN R. LAUSCH
United States Attorney

By:    */s/ Cornelius Vandenberg*
CORNELIUS A. VANDENBERG
Assistant U.S. Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604

Dated: August 11, 2021